IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN HARTSOE,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br><br>STATE OF MONTANA, et al.,<br><br>　　　　　　Defendants. | CV 16-87-M-DLC-JCL<br><br>FINDINGS AND<br>RECOMMENDATION |

Before the Court are Fed. R. Civ. P. 12(b)(6) motions to dismiss filed by Defendants Casey Emerson, C.B. McNeil, Ed McLean, Blair Jones, Victor Valgenti, John Murphy, Sue Schleif, Jim Rice, Patricia Cotter, Beth Baker, Mike Wheat, James Shea, Laurie McKinnon, Lyn Fricker, and Deborah Christopher. For the reasons discussed, the Court recommends the motions be granted.

**I.Background**

Plaintiff John Hartsoe, appearing pro se, commenced this action against private individuals, state and local governmental employees, and judicial officers for their violations of his rights which allegedly occurred during the course of criminal proceedings instituted against him in state court in 2008. He also alleges

1

certain Defendants are liable for violations of his rights in relation to civil litigation stemming from marital dissolution proceedings between he and Defendant Donna Heisel.

The majority of Hartsoe's claims allege specific Defendants, while acting under color of state law, violated his rights protected under the United States Constitution. Thus, Hartsoe sufficiently invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331. And to the extent any of Hartsoe's claims are asserted under the laws of the State of Montana, the Court possesses supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

This civil action constitutes yet another installment in a successive series of lawsuits Hartsoe has filed against many of the same Defendants in state and federal courts for the identical conduct relative to the same civil and criminal proceedings against Hartsoe. Therefore, the moving Defendants request dismissal based, in part, on the doctrine of res judicata or claim preclusion. For the reasons discussed, the Court agrees Hartsoe's claims are properly dismissed.

## II. Applicable Law

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal for failure to

state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

As a general rule "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). However, a court may take judicial notice of "matters of public record." *Id*. at 688-89. Specifically, a court may take judicial notice of other state or federal court proceedings. *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). *See also Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (allowing

judicial notice of pleadings in other cases).

Finally, because Hartsoe is proceeding pro se the Court must construe his pleading liberally, and the pleading is held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).

## III. Discussion

### A. C.B. McNeil

C.B. McNeil is a retired State District Court Judge who served in the Montana Twentieth Judicial District Court, Lake County, Montana. He presided over a civil action concerning real property in Lake County in which both Hartsoe and Heisel possessed interests. Heisel held judgment liens against that same property that arose from Hartsoe and Heisel's marital dissolution proceedings. The case over which McNeil presided is identified as *Heisel v. Hartsoe, et al.*, Cause No. DV-10-353 (*Heisel* case).

On July 13, 2011, McNeil convened a phone conference with the parties in the *Heisel* case. Hartsoe alleges that during that conference McNeil engaged in vulgar outbursts towards him.

As a result of McNeil's alleged conduct, Hartsoe moved to disqualify McNeil from presiding over the *Heisel* case. But Hartsoe complains McNeil

4

immediately denied the motion in violation of Hartsoe due process rights protected under the Constitution. Hartsoe contends McNeil's conduct demonstrates his bias and prejudice against Hartsoe.

McNeil set a summary judgment hearing for August 24, 2011, in the *Heisel* case. Hartsoe was incarcerated at that time and he was not allowed to attend the hearing. Hartsoe's siblings, Lilie Morris and James Hartsoe, attended the hearing and asked McNeil why Hartsoe was not at the hearing. McNeil responded to them by saying "[Hartsoe] doesn't need to be here." (Doc. 1-16 at 3 of 21.) Therefore, Hartsoe alleges McNeil's conduct in that regard violated Hartsoe's fundamental constitutional rights to appear and defend himself relative to his life, liberty or property. As a result of the *Heisel* case and McNeil's rulings, Hartsoe was divested of certain interests in the subject real property. Therefore, Hartsoe alleges McNeil is liable for depriving Hartsoe of his constitutional rights, and for conspiring with others involved in the *Heisel* litigation to effect a deprivation of Hartsoe's rights.

McNeil moves to dismiss Hartsoe's claims on the ground he enjoys judicial immunity from liability under the circumstances alleged by Hartsoe. McNeil further points out his motion is predicated on the same judicial immunity grounds on which this Court relied when it previously dismissed Hartsoe's identical claims

against McNeil prosecuted in this Court in *Hartsoe v. C.B. McNeil, Clinton Fischer, and Casey Emerson*, Cause No. CV 14-210-M-DLC-JCL (the *McNeil* case). *See McNeil* case, (doc. 5 at 2-5, and doc. 6 at 2). The Court agrees that McNeil is again entitled to judicial immunity in this case.

Judges are "absolutely immune for judicial acts." *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003). *See also Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). The doctrine of judicial immunity provides an immunity from suit, not just from an assessment of damages. *Mireles*, 502 U.S. at 11.

Judges are entitled to immunity "for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)). The necessary inquiry is whether the judge had jurisdiction over the subject matter of the action pending before the judge. *Stump*, 435 U.S. at 356. Judicial immunity is broadly construed, and a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 356-57 (quoting *Bradley*, 80 U.S. at 351). Even "grave

procedural errors" do not deprive a judge of immunity. *Ashelman v. Page*, 793 F.2d 1072, 1077 (9th Cir. 1986) (citing *Stump*, 435 U.S. at 359)).

Consequently, exceptions to judicial immunity are recognized only in two limited situations: (1) where the judge's actions were not taken in the judge's judicial capacity (*Mireles*, 502 U.S. at 11 ("nonjudicial actions")), and (2) where the judge has acted "in the 'clear absence of all jurisdiction[.]'" *Sadoski v. Mosley*, 435 F.3d 1076, 1079 (9th Cir. 2006) (quoting *Stump*, 435 U.S. at 356-57 and *Bradley*, 80 U.S. at 351). "A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction[,]" as distinguished from acts committed merely in excess of jurisdiction. *Miller v. Davis*, 521 F.3d 1142, 1147 (9th Cir. 2008) (citations omitted). Where "jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case[.]" *Stump*, 435 U.S. at 356 n.6 (quoting *Bradley*, 80 U.S. at 351-52).

Hartsoe does not allege that McNeil acted in the clear absence of all jurisdiction, or that he was not performing a judicial act when he committed the conduct alleged by Hartsoe. Rather, he asserts that McNeil made grave procedural errors by failing to recuse himself, conducting a summary judgment hearing in

Hartsoe's absence, and entering rulings against Hartsoe in a civil litigation matter depriving him of certain real property interests. But even liberally construed, Hartsoe's allegations do not invoke the exceptions to the doctrine of judicial immunity, but rather confirm that McNeil is entitled to judicial immunity for his alleged conduct. McNeil's motion should be granted in this respect.

### B. Casey Emerson

Based on Hartsoe's allegations, it appears Casey Emerson is a private attorney who represented another party in the *Heisel* case. Hartsoe alleges Emerson wrote and filed a brief in response to Hartsoe's motion for recusal filed in the *Heisel* case, but that the brief was filed after McNeil had denied Hartsoe's motion. Hartsoe alleges Emerson's conduct in that regard constituted a knowing violation of his due process rights.

Hartsoe also asserts Emerson attended the August 24, 2011 summary judgment hearing in the *Heisel* case and heard McNeil's comments stating Hartsoe did not need to attend the hearing. Hartsoe contends that Emerson, as an officer of the court, knew Hartsoe had a constitutional right to attend the hearing but failed to do anything to remedy the situation. Therefore, Hartsoe alleges Emerson conspired with others to violate Hartsoe's right to attend the hearing.

Emerson moves to dismiss Hartsoe's complaint based on the doctrine of

8

claim preclusion or res judicata. Hartsoe's claims against Emerson in this case are predicated upon the same factual allegations upon which he predicated his claims against Emerson in *Hartsoe v. C.B. McNeil, Clinton Fischer, and Casey Emerson*, Cause No. CV 14-210-M-DLC-JCL (*McNeil* case). *See McNeil* case, (doc. 2 at 9-14). Consequently, for the reasons discussed, Emerson's motion should be granted.

Res judicata, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata is applicable when (1) the prior litigation and the present action involve the same claims, or when the two cases have an "identity of claims;" (2) a final judgment on the merits was entered in the prior litigation; and (3) there exists privity between the parties in the two cases. *Headwaters, Inc. v. United States Forest Service*, 399 F.3d 1047, 1052 (9th Cir. 2005) (citations omitted).

In assessing whether two litigation matters involve the same claims, a court mus consider:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether

9

> the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.

*Headwaters, Inc.*, 399 F.3d at 1052.

The *McNeil* case and this case both arose out of the same nucleus of operative facts. In each case Hartsoe asserts Emerson is liable because she: (1) did not object to McNeil's denial of Hartsoe's motion for recusal in the *Heisel* case; and (2) failed to intervene in the summary judgment proceedings conducted on August 24, 2011, in the *Heisel* case when Judge McNeil proceeded with the hearing and a summary judgment ruling in Hartsoe's absence. Also, Hartsoe and Emerson were each parties to both the *McNeil* case and this case. Lastly, a final judgment was entered in the *McNeil* case – this Court dismissed Hartsoe's claims against Emerson with prejudice. *See McNeil* case, (doc. 6 at 2.) Therefore, Hartsoe's claims against Emerson advanced in this case are barred by the doctrine of res judicata, and should be dismissed.

### C. <u>Lyn Fricker</u>

In 2014 Lyn Fricker served as the Clerk of District Court for the Montana Twentieth Judicial District Court, Lake County, in Polson, Montana. Hartsoe states Fricker denied his requests to view a sealed court document, and refused to provide him with an explanation for her denial. Hartsoe had mailed a written

request to Fricker concerning the matter, and Hartsoe complains that Fricker improperly altered his document by placing a civil litigation cause number on Hartsoe's letter – the cause number of the *Heisel* case – and then submitted the letter to a District Judge in the Montana Twentieth Judicial District.

Inexplicably, Hartsoe later accessed and viewed the purportedly sealed document and apparently notified Fricker he had done so. Fricker then allegedly had Hartsoe arrested and charged with various criminal offenses.

Hartsoe alleges Fricker is liable to him for her conduct. He contends she is liable for altering his written document and submitting it to a judge, and that she is liable for the criminal charges brought against him. He complains that Fricker failed to "know[] her job description[,]" and apparently failed to perform her duties. (Doc. 1-8 at 2.)

Fricker moves to dismiss Hartsoe's claims under the doctrine of res judicata. Specifically, Fricker asserts Hartsoe previously filed these same claims against her in a civil action he commenced in the Montana Twentieth Judicial District Court, Lake County, and that those claims were dismissed. The Court agrees.

It is well-established that a federal court must give a state court judgment the same preclusive effect that the judgment would be given by the courts of the State in which the judgment was rendered. *Allen v. McCurry*, 449 U.S. 90, 96

(1980); *Mack v. Kuckenmeister, CPA, MST*, 619 F.3d 1010, 1016 (9th Cir. 2010). This rule of interjurisdictional preclusion arises from the provisions of 28 U.S.C. § 1738 which state, in relevant part, as follows:

> [J]udicial proceedings [...] shall have the same full faith and credit in every court within the United States [...] as they have by law or usage in the courts of such State [...] from which they are taken.

28 U.S.C. § 1738. *See Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003). Thus, in considering the preclusive effect of a state court judgment, section 1738 requires federal courts to apply the law of res judicata as adopted by the State from which the subject judgment emerged. *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010).

The doctrine of res judicata in Montana provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Brilz v. Metropolitan General Ins. Co.*, 285 P.3d 494, 499 (Mont. 2012). "The doctrine is premised on the policy that there must be some end to litigation." *Wiser v. Montana Board of Dentistry*, 251 P.3d 675, 676 (Mont. 2011).

Specifically, res judicata is applicable where the following circumstances exist:

(1) the parties or their privies are the same in the first and second actions;

12

> (2) the subject matter of the actions is the same; (3) the issues are the same in both actions, or are ones that could have been raised in the first action, and they relate to the same subject matter; (4) the capacities of the parties are the same in reference to the subject matter and the issues between them; and (5) a valid final judgment has been entered on the merits in the first action by a court of competent jurisdiction.

*Brilz*, 285 P.3d at 501. For the reasons discussed, the Court concludes these elements are satisfied in this case.

In 2015 Hartsoe commenced a civil action against Fricker in the Montana Twentieth Judicial District Court, Lake County, identified as *Hartsoe v. Fricker*, Cause No. DV-15-121 (*Hartsoe I*). Fricker filed copies of the relevant pleadings filed in *Hartsoe I*, and the Court will take judicial notice of those pleadings.

Hartsoe's complaint filed in *Hartsoe I* reflects that he advanced the same claims against Fricker in that case as he now pleads in this case. In *Hartsoe I* he alleged he was arrested on November 13, 2014, for viewing a public record, and his arrest was due to Fricker's failure to "know her job description." (Doc. 16-1 at 1.) He had previously made various requests of Fricker relative to a sealed document, and he complained she altered his written document by putting a civil litigation cause number on his document. (*Id.*)

The Court finds that all five of the res judicata elements identified in Montana law are satisfied in this situation. This lawsuit involves the identical

13

parties, claims, issues, and subject matters as were involved in *Hartsoe I*. Also, Fricker filed a copy of the state court's decision in *Hartsoe I* finding the merits of Hartsoe's allegations there failed to state a claim upon which relief could be granted, and dismissing the case on its merits. (Doc. 16-2.) Therefore, Hartsoe's claims here against Fricker are barred by the doctrine of res judicata.

### D. Deborah Christopher

Deborah Christopher is a District Court Judge in the Montana Twentieth Judicial District Court, Lake County. Hartsoe filed his complaint against her in this matter stemming from her conduct in presiding over a criminal prosecution against Hartsoe in *State of Montana v. Hartsoe*, Cause No. DC-08-110.

Hartsoe complains that on September 14, 2009, during the referenced criminal case, Christopher unlawfully found Hartsoe in contempt of court and had him arrested, thereby violating Hartsoe's constitutional rights. Hartsoe complains his arrest occurred without an arrest warrant.

On November 9, 2009, Christopher again found Hartsoe in contempt of court. Hartsoe contends Christopher's decision in that regard was unlawful.

Hartsoe next complains that Christopher improperly had the Lake County Attorney's office draft an order that she signed and issued in the referenced criminal case. He suggests her conduct shows unlawful collusion.

14

Hartsoe was apparently convicted for at least one criminal offense and he requested assistance from the public defender's office to prosecute an appeal. But he states an officer from the Sanders County probation and parole office, Sandy Van Skyock, inappropriately instructed him to pursue a petition for sentence review, not an appeal. Hartsoe alleges Christopher then filed documents in the criminal matter for the purpose of "clearing the action" of the alleged improper advice provided by Van Skyock.

Hartsoe next alleges Christopher had him strapped in a wheelchair at some point during his criminal case. He states the Montana Supreme Court found her conduct was unlawful, and it ordered a hearing on the issue. Hartsoe contends that during the hearing Christopher committed perjury three times by misstating facts relative to her alleged mistreatment of Hartsoe.

Christopher moves to dismiss all of Hartsoe's claims against her on the ground the claims are barred by the doctrine of res judicata based on several prior civil litigation matters he has commenced against her. For the reasons discussed, the Court agrees.

One of Hartsoe's prior litigation cases was an action he commenced in this Court identified at *Hartsoe v. Christopher, et al*, Cause No. CV 11-17-M-DWM-JCL (*Hartsoe II*). In *Hartsoe II*, Hartsoe sued Christopher for her conduct in

holding him in contempt of court and arresting him on both September 14, 2009, and November 9, 2009, relative to the criminal prosecution against him. *Hartsoe II*, (doc. 4 at 5.) He also sued her for placing him in shackles and strapping him to a chair. (*Id*.) Finally, he included allegations regarding Van Skyock's conduct asserting Van Skyock's advice violated his right to counsel. (*Id*. at 6.)

This Court found Hartsoe's claims against Christopher in *Hartsoe II* were all predicated upon her conduct as a judge committed in the course of the criminal proceedings against Hartsoe. *Hartsoe II*, (doc. 9 at 3). Consequently, this Court found Christopher was entitled to judicial immunity. Hartsoe's claims were dismissed, and a final judgment was entered against Hartsoe. *Hartsoe II*, (docs. 9 and 10).

The final judgment dismissing *Hartsoe II* bars Hartsoe, under the doctrine of res judicata, from advancing additional claims in this action against Christopher arising from the same conduct she allegedly committed while presiding over the criminal prosecution against him in state court. The doctrine prohibits Hartsoe from re-litigating the same claims that were raise, or claims that could have been raised in *Hartsoe II*. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Hartsoe's additional claims in this case against Christopher for signing an order drafted by the Lake County Attorney's Office, and for allegedly committing perjury during a

16

hearing in the criminal case could have been brought by Hartsoe in *Hartsoe II*. Therefore, Christopher's motion should be granted and Hartsoe's claims are subject to dismissal.

>   E.   **Ed McLean, Blair Jones, Victor Valgenti, John Murphy, and Sue Schleif**

Hartsoe brings claims against Ed McLean, Blair Jones, Victor Valgenti, John Murphy, and Sue Schleif in their capacities as members of the Judicial Standards Commission. He asserts that in 2013 he filed complaints with the Judicial Standards Commission against Deborah Christopher and Montana Supreme Court Justice Mike McGrath regarding their alleged criminal conduct committed in their roles as judges presiding over judicial proceedings. The members of the Judicial Standards Commission concluded that Hartsoe failed to demonstrate that either Christopher or McGrath violated any ethical rules or judicial standards. Therefore, Hartsoe alleges the members of the Judicial Standards Commission have thereby committed unlawful acts by upholding Christopher and McGrath's criminal conduct and dismissing Hartsoe's complaints against Christopher and McGrath.

Ed McLean, Blair Jones, Victor Valgenti, John Murphy, and Sue Schleif all move to dismiss Hartsoe's claims against them based on res judicata. Hartsoe

previously sued each of these Defendants in a prior federal action for the same conduct he is complaining about in this action. In that prior action, *Hartsoe v. Doyle, et al.*, Cause No. CV 14-63-H-DLC-JTJ (*Hartsoe III*), Hartsoe complained that these Defendants failed to properly respond to his complaints filed against Christopher and McGrath. *Hartsoe III*, (doc. 8 at 11). Those claims in *Hartsoe III* were dismissed, and a final judgment was entered against Hartsoe. *Hartsoe III*, (docs. 11 and 12).

Based on Hartsoe's prior litigation claims in *Hartsoe III*, his identical claims brought in this action against McLean, Jones, Valgenti, Murphy and Schleif are barred under the doctrine of res judicata. The Defendants' motion should be granted and Hartsoe's claims should be dismissed.

### F. Jim Rice, Patricia Cotter, Beth Baker, James Shea, Laurie McKinnon and Mike Wheat

Hartsoe advances claims against Jim Rice, Patricia Cotter, Beth Baker, James Shea, Laurie McKinnon and Mike Wheat in their capacities as Justices of the Montana Supreme Court who were responsible for reviewing decisions of the Judicial Standards Commission. He asserts he complained to them about the judicial misconduct allegedly committed by Christopher and McGrath, but that these Defendants refused to do anything to remedy the situation. Therefore, he

contends these Defendants are liable for sustaining the alleged wrongful acts committed by Christopher and McGrath.

Defendants Rice, Cotter, Baker, Shea, McKinnon and Wheat move to dismiss Hartsoe's claims based on judicial immunity. The Court agrees.

Under the doctrine of judicial immunity discussed previously, judges are "absolutely immune for judicial acts." *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003). *See also Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

Under the Montana Constitution, the Montana Supreme Court is granted the judicial authority to review recommendations of the Judicial Standards Commission. Mont. Const. art. VII, § 11. Therefore, Justices Rice, Cotter, Baker, Shea, McKinnon and Wheat's alleged decision not to respond to Hartsoe's complaints concerning Christopher and McGrath that were submitted to the Judicial Standards Commission qualify as a judicial act committed within the Montana Supreme Court's jurisdiction, and they are entitled to judicial immunity for that decision. Hartsoe's claims should be dismissed in this regard.

## IV. Conclusion

For the reasons discussed, IT IS RECOMMENDED that the Fed. R. Civ. P. 12(b)(6) motions to dismiss filed by Defendants Emerson, McNeil, Fricker,

19

Christopher, Rice, Cotter, Baker, Shea, McKinnon, Wheat, McLean, Jones, Murphy, Schleif, and Valgenti should be GRANTED, and Hartsoe's claims against those Defendants should be DISMISSED.

DATED this 21st day of December, 2016.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge