IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

JOHN HARTSOE,

                    Plaintiff,

        vs.

STATE OF MONTANA, et al.,

                    Defendants.

CV 16-87-M-DLC-JCL

FINDINGS AND
RECOMMENDATION

        Before the Court are Fed. R. Civ. P. 12(b)(6) motions to dismiss filed by

Defendants State District Judges James Manley and Loren Tucker, as well as

Montana Supreme Court Chief Justice Mike McGrath.  For the reasons discussed,

it is recommended the motions be granted.

## I.    Background

        Plaintiff John Hartsoe, appearing pro se, commenced this action against

private individuals, state and local governmental employees, and judicial officers

for their alleged violations of his rights during the course of civil and criminal

legal proceedings in which he was involved in the courts of the State of Montana.

        The majority of Hartsoe's claims allege the three referenced Defendants,

1

while acting under color of state law, violated his rights protected under the United States Constitution. Thus, Hartsoe sufficiently invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331. And to the extent any of Hartsoe's claims are asserted under the laws of the State of Montana, the Court possesses supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

This civil action is yet another installment in a successive series of multiple lawsuits Hartsoe has filed against many of the same Defendants in state and federal courts for the identical conduct relative to the same underlying civil and criminal proceedings in which Hartsoe was involved. Therefore, several of the Defendants, including Loren Tucker, have requested dismissal based, in part, on the doctrine of res judicata.

Defendants James Manley and Mike McGrath move for dismissal on the grounds of judicial immunity.

For the reasons discussed, the Court agrees Hartsoe's claims are properly dismissed based on either judicial immunity or res judicata.

## II. <u>Applicable Law</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal for failure to

state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9ᵗʰ Cir. 1990). To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9ᵗʰ Cir. 2010). The court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9ᵗʰ Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9ᵗʰ Cir. 2011).

As a general rule "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9ᵗʰ Cir. 2001) (citation omitted). However, a court may take judicial notice of "matters of public record." *Id*. at 688-89. Specifically, a court may take judicial notice of other state or federal court proceedings. *Duckett v. Godinez*, 67 F.3d 734, 741 (9ᵗʰ Cir. 1995), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9ᵗʰ Cir. 1988). *See also Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9ᵗʰ Cir. 1998) (allowing

judicial notice of pleadings in other cases).

Finally, because Hartsoe is proceeding pro se the Court must construe his pleading liberally, and the pleading is held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).

## III.  Discussion

### A.  Additional Background Facts

Manley, McGrath and Tucker are just three of numerous individuals named as defendants in this action and against whom Hartsoe has repeatedly pursued civil claims arising from his encounters with those individuals in the course of his civil and criminal legal proceedings in the courts of the State of Montana. Further details of Hartsoe's allegations against other Defendants named in this action are set forth in this ruling to provide background and context for his specific allegations against Manley, McGrath and Tucker.

C.B. McNeil, a Defendant in this action, is a retired State District Court Judge who served in the Montana Twentieth Judicial District Court, Lake County, Montana. He presided over a civil action in which Hartsoe was a defendant. The case is identified as *Heisel v. Hartsoe, et al.*, Cause No. DV-10-353 (*Heisel* case).

McNeil conducted a summary judgment hearing on August 24, 2011, in the

4

*Heisel* case. Hartsoe was incarcerated at that time and was not allowed to attend the hearing. Nonetheless, McNeil proceeded with the hearing in Hartsoe's absence. Hartsoe believes McNeil's conduct violated his constitutional rights, and resulted in rulings adverse to Hartsoe in the *Heisel* case.

Deborah Christopher, another Defendant named in this action, is a District Court Judge in the Montana Twentieth Judicial District Court, Lake County. Hartsoe sued her in this action stemming from her conduct while she was presiding over a criminal prosecution against Hartsoe in *State of Montana v. Hartsoe*, Cause No. DC-08-110 (*State v. Hartsoe* case).

Hartsoe alleges Christopher violated his constitutional rights when she, inter alia, found him in contempt of court, had him arrested, restrained Hartsoe with shackles in a wheelchair, and committed perjury during a hearing pertaining to her alleged mistreatment of Hartsoe.

Lyn Fricker, another named Defendant, served as the Clerk of District Court for the Montana Twentieth Judicial District Court, Lake County, in Polson, Montana during the time pertinent to this action. Hartsoe apparently requested Fricker allow him to view a public record in his civil case, but Fricker refused to do so because the requested document was sealed. Hartsoe then sent Fricker a letter challenging her denial of his request, and Fricker forwarded the letter to

Judge Manley informing him the letter pertained to the *Heisel* case. Somehow Hartsoe obtained access to, and viewed the sealed document. He alleges Fricker had Hartsoe arrested and charged with various criminal offenses for viewing the sealed document.

### B. Judicial Immunity

Manley, McGrath and Tucker each move to dismiss Hartsoe's claims on the grounds of judicial immunity. Judges are "absolutely immune for judicial acts." *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003). *See also Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). The doctrine of judicial immunity provides an immunity from suit, not just from an assessment of damages. *Mireles*, 502 U.S. at 11.

Judges are entitled to immunity "for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)). The necessary inquiry is whether the judge had jurisdiction over the subject matter of the action pending before the judge. *Stump*, 435 U.S. at 356. Judicial immunity is broadly construed, and a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject

to liability only when he has acted in the 'clear absence of all jurisdiction.'"
*Stump*, 435 U.S. at 356-57 (quoting *Bradley*, 80 U.S. at 351).  Even "grave
procedural errors" do not deprive a judge of immunity.  *Ashelman v. Page*, 793
F.2d 1072, 1077 (9th Cir. 1986) (citing *Stump*, 435 U.S. at 359)).

Consequently, exceptions to judicial immunity are recognized only in two
limited situations:  (1) where the judge's actions were not taken in the judge's
judicial capacity (*Mireles*, 502 U.S. at 11 ("nonjudicial actions")), and (2) where
the judge has acted "in the 'clear absence of all jurisdiction[.]'"  *Sadoski v.
Mosley*, 435 F.3d 1076, 1079 (9th Cir. 2006) (quoting *Stump*, 435 U.S. at 356-57
and *Bradley*, 80 U.S. at 351).  "A clear absence of all jurisdiction means a clear
lack of all subject matter jurisdiction[,]" as distinguished from acts committed
merely in excess of jurisdiction.  *Miller v. Davis*, 521 F.3d 1142, 1147 (9th Cir.
2008) (citations omitted).  Where "jurisdiction over the subject-matter is invested
by law in the judge, or in the court which he holds, the manner and extent in which
the jurisdiction shall be exercised are generally as much questions for his
determination as any other questions involved in the case[.]"  *Stump*, 435 U.S. at
356 n.6 (quoting *Bradley*, 80 U.S. at 351-52).

C.  **James Manley**

James Manley is a State District Court Judge in the Montana Twentieth

7

Judicial District Court, Lake County, Montana. Hartsoe states that on November 26, 2013, he submitted a "criminal complaint" to Manley accusing District Judge Christopher of perjury and other criminal offenses she committed against him which violated his rights and caused him to sustain damages and losses. In response, Manley issued an order directing the Clerk of the District Court not to file Hartsoe's criminal complaint. Manley's order is attached to Hartsoe's complaint. (Doc. 1-9 at 5.)

Hartsoe's criminal complaint alleged Christopher committed perjury, a felony offense in Montana. Mont. Code Ann. § 45-7-201. District courts in Montana have jurisdiction over felony offenses, and the district court is charged with assessing whether probable cause exists to allow the filing of a criminal charge. Mont. Code Ann. §§ 3-5-302 and 46-11-110. Therefore, Manley's act of issuing an order directing that Hartsoe's criminal complaint not be filed was a judicial act committed within his jurisdictional authority, and for which he is entitled to judicial immunity.

Hartsoe next complains that Manley, as the successor presiding judge in the *Heisel* case, knew about McNeil's conduct in proceeding with the summary judgment hearing in Hartsoe's absence. Hartsoe alleges Manley refused to remedy that situation, and covered up the fact the hearing was held in Hartsoe's absence.

Hartsoe relies upon an order entered by Manley on March 13, 2014, in the *Heisel* case. Hartsoe attached a copy of the referenced order to his complaint against Manley. (Doc. 1-9 at 12-13.)

District courts in Montana have jurisdiction over all civil matters. Mont. Code Ann. § 3-5-302. Manley's order issued relative to McNeil's conduct was a judicial act within his jurisdictional authority as the judge presiding over the *Heisel* case. Therefore, he is entitled to judicial immunity for that act.

Finally, Hartsoe references the letter he submitted to Fricker in 2014 which Fricker forwarded to Manley. He complains that Manley responded to Hartsoe's letter by instructing Fricker not to take any further action with respect to the letter. (Doc. 1-9 at 14.) Hartsoe contends Manley's response was improper given that he had been asking Fricker to allow him to see a public record in the *Heisel* case. He complains Manley's response caused Hartsoe to be arrested and charged with criminal offenses.

As a judge of a district court in Montana, Manley possesses jurisdiction and authority over, and power to control, all civil matters or "special actions or proceedings that are not otherwise provided for[,]" and power "to hear and determine any matter necessary in the exercise of the judge's powers [...] in any action or proceeding[.]" Mont. Code Ann. §§ 3-5-302(1)(b) & (e) and 3-5-

311(1)(c). Manley construed Hartsoe's request to view a sealed document in the *Heisel* case, but he determined that a letter to Fricker was "not a legally-recognized pleading" appropriate for filing in the *Heisel* case, or to which any response from either the court or the Clerk of Court was required. (Doc. 1-9 at 14.) Rather, he advised Fricker that a formal motion was required, and that Fricker could not simply grant the relief informally requested by Hartsoe. Thus, Manley made a judicial determination as to the propriety of Hartsoe's request submitted to Fricker, and his conduct constitutes a judicial act within his jurisdiction over civil matters pending before the district court. Manley is entitled to judicial immunity for his conduct in instructing Fricker.

### D. **Mike McGrath**

Mike McGrath is the Chief Justice of the Montana Supreme Court. Hartsoe states that on April 10, 2013, he submitted a motion to McGrath requesting that Deborah Christopher be disqualified from presiding over a pending civil case in which Hartsoe was the plaintiff. McGrath responded by letter dated November 21, 2013, noting that Christopher had recused herself from the case and Manley had assumed jurisdiction over the case. Therefore, McGrath apparently took no affirmative action to rule on Hartsoe's request that Christopher be disqualified.

Hartsoe alleges McGrath's conduct in failing to conduct a hearing

constituted a concealment of Christopher's illegal acts in violation of federal law.

Hartsoe states he submitted his request for Christopher's disqualification to McGrath pursuant to Mont. Code Ann. § 3-1-805. And McGrath responded to Hartsoe's request in his capacity as the Chief Justice of the Montana Supreme Court as provided in section 3-1-805. (Doc. 1-13 at 5.) Accordingly, McGrath's conduct in responding to Hartsoe's motion was a judicial act within his jurisdictional authority, and he is entitled to judicial immunity for the conduct.

### E. Loren Tucker

Loren Tucker is a State District Court Judge who was apparently assigned to preside over the criminal prosecution against Hartsoe in *State v. Hartsoe*. On May 29, 2012, Tucker issued an order in that case addressing the propriety of Hartsoe's appearance before the jury in his criminal trial while shackled to a chair. (Doc. 1-19 at 7-11.) Tucker concluded the circumstances violated Hartsoe's constitutional rights, did not constitute a harmless error, and he ordered a mistrial in the case. (*Id*.) On February 26, 2013, Tucker, upon Hartsoe's motion, dismissed the criminal charges against Hartsoe. (Doc. 1-19 at 29.)

Hartsoe complains that Tucker's order declaring a mistrial was two and a half years after his criminal trial ended and, therefore, was in violation of his constitutional rights to due process. He asserts Tucker was trying to cover up

11

Christopher's alleged misconduct and mistreatment of Hartsoe during his criminal trial.

Tucker moves to dismiss Hartsoe's complaint against him based on both judicial immunity and the doctrine of res judicata. Hartsoe's claims against Tucker in this case are predicated upon the same factual allegations Hartsoe presented in his prior civil action against Tucker in this federal court identified as *Hartsoe v. Doyle, et al.*, Cause No. CV 14-63-H-DLC-JTJ (*Hartsoe v. Doyle* case). Consequently, for the reasons discussed, Tucker's motion should be granted based on res judicata.

Res judicata, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata is applicable when (1) the prior litigation and the present action involve the same claims, or when the two cases have an "identity of claims;" (2) a final judgment on the merits was entered in the prior litigation; and (3) there exists privity between the parties in the two cases. *Headwaters, Inc. v. United States Forest Service*, 399 F.3d 1047, 1052 (9th Cir. 2005) (citations omitted).

In assessing whether two litigation matters involve the same claims, a court

must consider:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.

*Headwaters, Inc.*, 399 F.3d at 1052.

In the *Hartsoe v. Doyle* case, Hartsoe sued Tucker for the exact same conduct Hartsoe complains of in this case. In that case he asserted Tucker was liable for issuing an order declaring a mistrial in the *State v. Hartsoe* case two and a half years after Hartsoe's criminal trial. *Hartsoe v. Doyle*, (doc. 2-4 at 7.) Those prior claims against Tucker were dismissed on the grounds of judicial immunity, and a final judgment was entered against Hartsoe. *Hartsoe v. Doyle*, (docs. 11 and 12).

Based on the foregoing, all of the elements of res judicata exist in this case due to Hartsoe's prior claims against Tucker in *Hartsoe v. Doyle*. Therefore, Tucker's motion asserting res judicata should be granted.

## IV.  Conclusion

For the reasons discussed, the Court concludes Manley and McGrath are entitled to judicial immunity from liability for Hartsoe's claims. Hartsoe does not

allege that either Manley or McGrath acted in the clear absence of all jurisdiction, or that they were not performing judicial acts when they committed the conduct alleged by Hartsoe.

Furthermore, the Court concludes Hartsoe's claims against Tucker are barred under the doctrine of res judicata.

Therefore, IT IS RECOMMENDED Manley, McGrath, and Tucker's Fed. R. Civ. P. 12(b)(6) motions to dismiss be GRANTED, and that Hartsoe's claims against these Defendants be DISMISSED.

DATED this 6th day of January, 2017.

Jeremiah C. Lynch
United States Magistrate Judge